UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

THOMAS CIMALORE, et al.          :
                                 :
         v.                      :     C.A. No. 15-313L
                                 :
TOWN OF WESTERLY, et al.         :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); Local Rule CV 72(a)) are Plaintiffs' Motion for a Preliminary Injunction (Document No. 26) and Defendants' Motions to Dismiss this action pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Document Nos. 27 and 28). A hearing was held on December 15, 2015. For the following reasons, I recommend that Plaintiffs' Motion for a Preliminary Injunction (Document No. 26) be DENIED and Defendants' Motions to Dismiss (Document Nos. 27 and 28) be DENIED.

**Facts**

Plaintiffs Thomas Cimalore, Anthony Falcone, Scott Ferrigno and Raymond Morrone, perform services for the Town of Westerly as part-time, nonpermanent police officers, i.e., Constables, pursuant to Section 9-1-8 of the Town's Charter.[1] Plaintiff Darrell Koza performed

---

[1] Section 9-1-8 provides that:

> In addition to the members of the permanent police force, the Manager, upon recommendation of the Director of Public Safety and the Chief of Police, may appoint additional constables for occasional service, and for limited terms. Said constables shall, while on assigned duty, have the powers of regular police officers and shall receive such compensation commensurate with their duties as may be fixed by the Council. A constable may be removed at any time by the Manager upon recommendation of the Chief of Police and the Director of Public Safety.

such services through December 4, 2014. Constables are "assigned to work private and special duty details, including special events and assignments for the Town and schools" as well as "foot patrol work, traffic control, and related police work." (Document No. 2, ¶ 26). Defendants are the Town of Westerly and its Town Manager and Director of Public Safety, Finance Director and Chief of Police, as well as Westerly Local #503, International Brotherhood of Police Officers ("Local 503"). Local 503 is the collective bargaining representative of the Town's full-time, permanent Police Officers. Local 503 does not represent the Constables.

The Town and Local 503 are parties to a collective bargaining agreement for the term July 1, 2013 to June 30, 2016 (the "CBA"). (Document No. 1-2). The CBA was signed on June 23, 2014 and contains provisions regarding the assignment and compensation of private and special-duty details. It effectively gives full-time, permanent Police Officers a right of first refusal for detail assignments before they are offered to "civilian constables." (Document No. 1-2 at p. 6). The CBA provides for a rate of $38.00 per hour for detail work and the additional charge to private entities of $4.00 per hour for an administration fee for "private details." Id. at p. 7. Finally, the CBA provides that "[f]or any private duty detail worked by a constable or reserve officer (who was not formerly a Westerly Police Officer), said reserve or constable shall make a contribution of $5.00 per hour to Local 503." Id.

Plaintiffs challenge the legality of this $5.00 per hour mandatory "contribution" and argue that it is an illegal "Forced Union Fee." Plaintiffs assert that the Town and Local 503 unlawfully began, without prior notice or lawful authorization, deducting the $5.00 per hour contribution from

---

The Constables are also referred to as Reserve Officers in the Complaint. The Court will use the term Constable for consistency.

their pay in April 2014 as "CRSR Dues." (Document No. 2, ¶¶ 30-32). Plaintiffs contend that this compelled contribution to Local 503 violates their constitutional rights including their freedom of association under the First Amendment. (Claim One). Plaintiffs also allege that the Town unconstitutionally retaliated against them for engaging in constitutionally protected speech in opposition to the contribution by revising the system for assigning details which "reduced and limited [their] hours and pay." (Document No. 2, ¶ 82) (Claim Two). Finally, Plaintiffs allege that the deduction of the contribution and assignment to Local 503 violates Rhode Island's Payment of Wages Act (Claims Three and Four) and they bring additional state law retaliation and whistleblower claims. (Claims Five and Six).

**Discussion**

    **A.    Standard of Review**

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court construes the Complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v.

Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). The complaint "must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559).

### B. Defendants' Arguments

Defendants argue that Plaintiffs' Complaint is conclusory and fails to set forth sufficient well-pleaded facts to state any claims upon which relief may be granted. (Document No. 27-1 at p. 8). In particular, they contend that Plaintiffs do not plead sufficient facts demonstrating "that they are employees; that they are being forced to associate or contribute to the Union; or that any of the contributions made to [Local 503] pursuant to the CBA are being used for political or ideological activity." Id. at pp. 10-11. Further, they contend that the challenged contributions are completely within Plaintiffs' "discretion" since they can choose not to accept private detail assignments and thus they are not being "forced" to perform any work for the Town in violation of their constitutional rights. Id. at pp. 7, 11. Finally, as to the constitutional and state law retaliation claims, Defendants contend that Plaintiffs did not engage in any protected speech, were not subject to any adverse employment, and, in any event, there are no well-pleaded factual allegations that Plaintiffs' alleged protected speech was a motivating factor in the Town's decision to revise the detail assignment system. Id. at pp. 17-19.

### C. Supreme Court Precedent

In their Complaint, Plaintiffs cite to Knox v. Serv. Emps. Int'l Union, Local 1000, 132 S. Ct. 2277 (2012) ("Knox") and Chicago Teachers' Union, Local No. 1, AFT, AFL-CIO v. Hudson, 475 U.S. 292 (1986) ("Hudson"), in support of their constitutional claims. Both of these cases

involve public-sector "agency shop" arrangements. Agency shop is a form of union security whereby employees in a unionized workforce who are not union members must pay a service or "fair share" fee to the union as a condition of employment.[2] "[A]gency-shop arrangements in the public sector raise First Amendment concerns because they force individuals to contribute money to unions as a condition of government employment." Davenport v. Washington Educ. Ass'n, 551 U.S. 177, 181 (2007).

In Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977), the Supreme Court held that a public-sector union may constitutionally charge nonmembers for collective bargaining and contract administration expenses but may not require nonmembers to fund the union's political and ideological activities. The Court recognized that the union must "fairly and equitably" represent the interests of all employees regardless of union membership and that an "agency shop" arrangement fairly allocates the cost of these activities to all who benefit, and "counteracts the incentive that employees might otherwise have to become 'free riders' to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees." Id. at pp. 221-222.

Subsequently, in Hudson, the Supreme Court established the procedural requirements that a public sector union must meet to collect "agency shop" fees from nonmembers without violating their First Amendment rights. In Knox, the Supreme Court later held that these procedural requirements also independently applied when the union imposed a special assessment or dues increase.

---

[2] This is not a public-sector "agency shop" case. There is no allegation that Plaintiffs are performing bargaining unit work covered by the CBA or that Local 503 has any legal duty to represent Plaintiffs in any capacity. Plaintiffs' counsel also indicated at oral argument that he believed this to be a case of first impression.

Additionally, Plaintiffs rely in their brief on Harris v. Quinn, 134 S. Ct. 2618 (2014). In Harris, the Supreme Court refused to extend the rationale of Abood to a case involving personal assistants providing in-home care to Medicaid recipients in Illinois. The Court described their status as "unusual" and noted that they were not "full-fledged state workers." Id. at pp. 2636, 2638. The Court observed that the personal assistants were deemed to be state employees "for one purpose only, collective bargaining, but the scope of bargaining that may be conducted on their behalf is sharply limited" to pay and benefits. Id. at p. 2635. Accordingly, applying exacting First Amendment scrutiny, the Court confined Abood's reach to "full-fledged state employees" and held that the First Amendment prohibited the collection of any agency fee from personal assistants who did not want to join or support the union. Id. at pp. 2639-2644.[3]

### D. Analysis

Defendants' counsel described these Motions as "primarily a Twombly challenge" during oral argument. To survive a motion to dismiss under Twombly, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief. 550 U.S. at 555, 559. A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

---

[3] On January 11, 2016, the Supreme Court heard argument in yet another public sector "agency shop" case. Friedrichs v. Calif. Teachers Assn., No. 14-915 (U.S. Jan. 11, 2016). In Friedrichs, the questions presented to the Supreme Court are (1) whether Abood should be overruled and public sector "agency shop" arrangement invalidated under the First Amendment; and (2) whether Hudson's opt-out procedure for objectors to "nonchargeable" speech violates the First Amendment, rather than requiring that employees affirmatively opt-in to subsidizing such speech.

Although Plaintiffs' Complaint does contain some legal conclusions, it is not based on the kind of "threadbare recitals" criticized in Iqbal. 556 U.S. at 678. For instance, the Complaint identifies the challenged "contribution" as a "Forced Union Fee." While Plaintiffs' conclusory label is, of course, not controlling, the Complaint does contain sufficient factual allegations to support the claim that the Constables are required by the CBA to contribute $5.00 per hour to Local 503 for private duty detail work and that the Town has been unilaterally deducting these contributions from their pay since April 2014. Further, Plaintiffs cite to § 9-1-8 of the Town's Charter which provides, in part, that Constables "shall receive such compensation commensurate with their duties as may be fixed by the Council," but the rate appears to be set by the CBA between the Town and Local 503 and not by Council resolution or other action. In other words, Plaintiffs allege that they are not represented by Local 503 and do not work under the CBA, but the CBA sets their compensation and requires them to contribute to Local 503. Although this appears to be a case of first impression, Plaintiffs' Complaint, in the context of the Supreme Court precedent discussed previously, alleges at least a plausible entitlement to relief on their constitutional claims.

Defendants additionally contend that Plaintiffs are not being "forced" to make such contributions because they can choose not to accept private detail assignments. However, that begs the question of what is a condition of employment. If Defendants' argument was viable, then I assume that the labor unions in Abood and its progeny would have successfully defended those cases by simply arguing that the non-members were not "forced" to pay the agency fee to the union because they could choose to work elsewhere. They did not because it is not a viable defense and Defendants here offer no legal support for it.

Defendants also contend that Plaintiffs' Complaint fails because it assumes that they are employees when they are not. Defendants assert that the Constables are independent contractors "whose services and compensation are completely at the discretion of the Town." (Document No. 27-1 at p. 7). "The determination of whether a relationship between parties constitutes an employer-employee relationship is a mixed question of fact and law." Cayer v. Cox Rhode Island Telecom, 85 A.3d 1140, 1144 (R.I. 2014) (The ability to control the method and means of an individual's work performance is required to find an employer/employee relationship.).

While identifying themselves as "employees" is a legal conclusion, Plaintiffs' Complaint contains enough factual allegations to state at least a plausible claim of employee status. First, in Harris, although the Supreme Court recognized that personal assistants providing home care were not full-fledged public employees, it still held that the First Amendment prohibited the compelled agency fee payments to the Union. 134 S. Ct. at 2634-2636, 2639.[4] Second, Plaintiffs have alleged sufficient factual indicia suggestive of employment status to at least overcome the present Rule 12(b)(6) challenge as to all of their claims. For example, the Town's Charter provides for the "appointment" of Constables who, "while on assigned duty, have the powers of regular police officers."[5] It is undisputed that the Town's "regular" police officers are employees and that the performance of their police powers is subject to control and supervision by the Town. It is thus reasonable to infer that the Town would not give those same powers to Constables and treat them as independent contractors with less oversight and accountability. Plaintiffs allege that the Town

---

[4] The Court in Harris expressed concern over the potential of extending Abood's reach to "a host of workers who receive payments from a governmental entity for some sort of service." 134 S. Ct. at 2638.

[5] Plaintiffs allege that the Town's Police Chief criticized them for taking their complaints outside the "chain of command." (Document No. 2, ¶ 46). Although chain of command is a term generally used in the military context, it can also suggest the supervisory hierarchy in an employment setting.

issues "certification cards" to them stating that they are "nonpermanent police officers." (Document No. 2, ¶ 24). Plaintiffs also allege that their "work consists of providing a law enforcement and security presence as part of private and special duty details...[and] foot patrol work, traffic control, and related police work, and that the Town maintains a detail assignment system for allocating the detail work to employees including full-time police officers as well as Constables. Id. at ¶¶ 26, 57. Finally, Plaintiffs assert that the Town unilaterally deducts the $5.00 contribution from their compensation and it is reasonable to infer that such a deduction would not likely be permitted in a purely contractual relationship.

As to the retaliation and whistleblower claims, Defendants argue that they are "forced to speculate" as to the basis for such claims because Plaintiffs' Complaint is "riddled with legal conclusions." (Document No. 27-1 at p. 14). While Plaintiffs' Complaint does include some legal conclusions, it does contain enough factual averments to at least state a plausible claim for relief and provide Defendants with fair notice. Simply put, Plaintiffs plainly allege that they and their representatives "opposed, challenged, and advocated" against the imposition of the "contribution" in issue, and the Town's unilateral deduction of such amounts from their compensation as a violation of their constitutional and statutory rights. They allege that they articulated their concerns to Town Officials in various ways culminating in an October 27, 2014 meeting. (Document No. 2, ¶¶ 43-55).[6] Plaintiffs allege that, shortly thereafter, the Town revised its detail assignment system in a manner which diminishes their hours and pay. Plaintiffs contend that their prior protected speech and conduct was a "substantial and motivating factor" for the revision.

---

[6] Plaintiffs allege that, on or about November 23, 2014, a local newspaper published a report about this dispute which supports their claim that the matter is one of public concern for purposes of their claim under Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). (Document No. 2, ¶¶ 56, 81).

Although Plaintiffs do not identify any "smoking gun" evidence of retaliatory motive, they contend that such motive can reasonably be inferred from circumstantial evidence such as the timing of the revision, other contemporaneous instances of retaliation including Plaintiff Koza's termination as a Constable, the lack of any proffered justification for the revision, and the long-term functionality of the prior system without relevant incident or complaint. Id. at ¶ 83. For pleading purposes, Plaintiffs' allegations are sufficient to state plausible claims of constitutional and statutory retaliation and survive the present challenge under Rule 12(b)(6).

**Conclusion**

For the foregoing reasons, I reject Defendants' "Twombly challenge" to Plaintiffs' Complaint and find that it states at least plausible constitutional and statutory claims upon which relief could be granted. Accordingly, I recommend that Plaintiffs' Motion for Preliminary Injunction (Document No. 26) be DENIED[7] and that Defendants' Motions to Dismiss (Document Nos. 27 and 28) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v.

---

[7] Plaintiffs also move for a preliminary injunction restraining further enforcement of the $5.00 hourly "contribution" to Local 503. (Document No. 26). Plaintiffs factually rely primarily on their pleadings and five perfunctory Affidavits. After review of Plaintiffs' submissions in the context of the substantial showing necessary to support preliminary relief, I conclude that Plaintiffs have neither shown a likelihood of success on the merits nor that, in the absence of preliminary relief, they will suffer irreparable harm that could not be addressed by traditional legal remedies. See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). Accordingly, I recommend that Plaintiffs' Motion for a Preliminary Injunction (Document No. 26) be DENIED.

Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 8, 2016